UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RANDY LEE HALL, | Case No. C21-992RSM |
| Petitioner, | ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## I.     INTRODUCTION

Before the Court is Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence. Dkt. #1. Randy Lee Hall challenges the 90-month and 120-month sentences imposed on him by this Court following his guilty plea to three counts including assault of federal officers and using a firearm during a crime of violence. *Id.* at 1; Case No. 2:16-cr-00225-RSM, Dkts. #106 and #107. Petitioner asserts five ineffective assistance of counsel claims. After full consideration of the record, and for the reasons set forth below, the Court DENIES Petitioner's § 2255 Motion.

## II.     BACKGROUND

The Court generally agrees with the relevant background facts as set forth by the Government and demonstrated by court records. *See* Dkt. #5 at 2–9. Mr. Hall has failed to file a reply brief and therefore does not dispute this largely procedural background. The Court will attempt to focus only on those facts necessary for a ruling.

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 1

In late spring of 2016, law enforcement became aware of information tying Mr. Hall to an April 2016 drive-by shooting in Seattle. At the end of June 2016, an ATF special agent, two ATF task-force agents, and Washington State Department of Corrections Officer Kris Rongen attempted to arrest Mr. Hall on an unrelated misdemeanor warrant in the parking lot outside the apartment where he lived. Dkt. #5-1 at 32 (the Plea Agreement in the underlying criminal case). As Mr. Hall approached the door of his car, the arrest team pulled up behind his car, identified themselves as police, and ordered him to get on the ground so that they could arrest him. *Id.* The officers had their guns drawn in the "low-ready" position. Mr. Hall did not comply with the officers' commands. Instead he walked over to the driver's side door, opened it, and sat down in the driver's seat sideways with his feet out. He started the car. *Id.* Officer Rongen holstered his firearm, drew his Taser, and started to approach. *Id.* Mr. Hall reached his hand down toward the floorboard of his car, picked up a semi-automatic pistol, and pointed it at Officer Rongen and the three other agents. *Id.* Officer Rongen yelled "Taser" and used it. *Id.* at 33. Mr. Hall then shot Officer Rongen twice, striking him in the left shin and kneecap. *Id.* Two of the other agents then returned fire; Mr. Hall was hit by multiple rounds in the shoulder and upper arm. *Id.* Everyone survived.

After the above incident, ATF agents obtained a search warrant for Mr. Hall's apartment, finding ammunition for several firearms. *Id.*

The second superseding indictment charged Mr. Hall with assault of federal officers and assault of a person assisting federal officers, both in violation of 18 U.S.C. § 111(a)(1) and (b); two counts of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1(A)(i) – (iii); and unlawful possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). *Id.* at 12. The first 924(c) count in the indictment carried a mandatory-

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 2

minimum penalty of ten years of imprisonment, which the district court would have been required to impose consecutive to any sentence imposed on the other counts. 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(D) (2016). At the time of the second superseding indictment, the second 924(c) count carried a mandatory-minimum penalty of twenty-five years of imprisonment, which the district court would have been required to impose consecutive to the ten-year mandatory minimum for the first 924(c) count and any sentence it imposed for the other counts. 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(D) (2017).

In October 2018, Mr. Hall (represented by defense counsel Lee Edmond) filed a motion in limine to prevent the United States from using certain evidence at trial. Dkt. #5-2 at 4. Hall's motion, the government's response, and the hearing before the district court reflect that the government had developed evidence showing Hall's involvement not only in the charged offenses, but also in the April 2016 drive-by shooting. *Id.* at 4, 22, and 58.

After a hearing, this Court denied Hall's motion in limine to exclude evidence relating to the April 2016 drive-by shooting. *Id.* at 80–81. The Court concluded that the evidence was relevant to establishing elements of the charged offenses, including the two assault counts and the offense of possession of ammunition. *Id*. The Court found that the evidence was relevant to countering Hall's defense that he did not purposefully shoot Officer Rongen but rather the "effects of the taser ma[d]e him do it." *Id.* at 81. The Court found that the evidence was not unfairly prejudicial. *Id*.

In March of 2019, Mr. Hall entered into a plea agreement where the Government dropped three counts, resulting in a new mandatory minimum sentence of ten years. The agreement also provided that, in exchange for Hall's guilty plea and satisfaction of the terms of the agreement, the King County Prosecuting Attorney's Office would forgo charges arising

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 3

from the April 2016 drive-by shooting, including charges of assault in the first degree, drive-by shooting, and unlawful possession of firearm in the first degree. *See* Dkt. #5-1 at 34–35. The plea agreement included an appellate waiver in which Hall agreed, "on the condition that the Court imposes a custodial sentence of not more than 19 years," to waive "any right conferred by Title 18, United States Code, Section 3742 to appeal the sentence," and "any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation." *Id*. at 36. The plea agreement also stated that Hall "has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this agreement, were made to induce Defendant to enter this plea of guilty." *Id*. at 37.

Mr. Hall pleaded guilty at a hearing before a magistrate judge. *See id.* at 39 (transcript of change of plea hearing). The magistrate judge reviewed the elements of each charge to which Mr. Hall was admitting guilt, asked him to confirm that he understood each of the elements, and confirmed that he understood the factual assertions in the plea satisfying each element. The magistrate judge reviewed various provisions of the agreement, including the rights that Hall was waiving by pleading guilty. Hall affirmed that he was aware of the potential penalties and the rights that he was giving up. The magistrate judge had the prosecutor summarize the factual basis for the plea set out in the plea agreement and asked Hall to affirm that he was agreeing to all those facts, which he did. The magistrate judge then confirmed that Hall had the opportunity to review the agreement, discuss it with his lawyer, and make an intelligent decision before he signed it. Specifically, the magistrate judge asked Hall: "And you know, you are represented in court by a lawyer, and before coming to court today did you have enough time to discuss the whole case, I guess including your state matters, which are

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 4

possibly pending, with your lawyer to make an intelligent decision about pleading guilty or doing something else? Did you have enough time to do that?" *Id.* at 53. Hall answered, "Yes." *Id.* The magistrate judge asked whether Hall was giving up his rights and pleading guilty freely and voluntarily, and Hall answered, "Yeah." *Id.* Lee Edmond, Hall's attorney, affirmed that he was not aware of any reasons that the magistrate judge should not accept Hall's guilty plea. Hall then pleaded guilty to counts 1-3 in the superseding indictment. The magistrate judge told Hall that he would prepare a report recommending that the district court accept his plea and that Hall would have the opportunity to file objections to the report. Hall filed no objection.

Mr. Hall's sentencing memorandum stated he "fully accepts responsibility for his intentional act of firing his weapon and wounding Officer Rongen." *Id.* at 61.

The sentencing hearing occurred on October 25, 2019. Dkt. #106. Hall told the Court that he did not "wake up every day thinking about, 'Oh, I got warrants. I want to shoot my way out of this situation,' or anything like that." *Id.* at 87. He explained that there were "some things that—in this plea that I took. And I asked for some language changes. I asked for, like, certain things, but I kind of felt like my life was pinned to the floor." *Id.* Hall also asserted that Mr. Edmond had not shared the sentencing memorandum with him before he filed it and said that he did not agree with some of the statements made in the memo. *Id.* at 91. The Court asked whether Hall had the opportunity to discuss the sentencing memo with Mr. Edmond since it had been filed, and Hall confirmed that he had. The Court asked Hall: "Do you feel you've had enough of an opportunity now?" *Id.* at 92. Hall replied, "Yeah, but it's too late. You have it. You read it." *Id.*

Mr. Hall then said:

> I don't want to prolong this, Your Honor. This burden – this situation has broken me down so much, to where I feel like the

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 5

> officer deserve whatever justices that he wants out of me. I feel like that, you know, they think I'm a risk to the community. If that's what it is, then I just want to get this over with, behind. I'm tired of bringing my family up here to this federal courthouse, embarrassing them.

*Id.* The Court responded that Hall had an absolute right to review the sentencing memorandum before it was filed and asked whether Hall was willing to waive that right "understanding what is in the memo now." *Id.* at 93. Hall responded, "Yes. Yes. I just want to waive it, Your Honor." *Id.*

The Court sentenced Hall to 90 months of imprisonment for the two assault charges and the mandatory-minimum 120 months of imprisonment, consecutive to the other charges, for the use of a firearm during a crime of violence. *Id.* at 100.

Mr. Hall filed a direct appeal with the Ninth Circuit Court of Appeals, which raised only two issues: (1) whether the district court had impermissibly burdened his right to counsel by warning Hall that it would not appoint a fourth attorney for him if he could not get along with Mr. Edmond; and (2) whether the magistrate judge who conducted the change-of-plea hearing violated Rule 11 by failing to expressly inquire into whether Hall's guilty plea resulted from "force or threats." The Ninth Circuit rejected Hall's arguments and affirmed his conviction. Dkt. #5-3.

Mr. Hall filed this instant petition pro se on July 22, 2021. Dkt. #1. He asserts five ineffective assistance of counsel claims. First, Hall claims that Mr. Edmond was ineffective by failing to "ask for an evidentiary hearing" at which he could have presented an expert witness on "stun guns" (Tasers) to establish that Hall "accidentally discharge[d]" his firearm at Officer Rongen. Second, Hall claims: that Mr. Edmond "threaten[ed]" and "lied" to him to "get [Hall] to take the [plea] deal;" Hall essentially repeats the same argument he made on direct appeal –

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 6

that the district court forced Hall to plead guilty by stating that it would not appoint Hall a fourth defense counsel. Hall's third claim is that Mr. Edmond was ineffective by advising him that a consequence of not entering the guilty plea was that state prosecutors would charge him with offenses arising out of the April 2016 drive-by shooting and that those charges carried a sentence of up to 27 years. Hall's fourth claim is that Mr. Edmond was ineffective because he failed to explain the appellate waiver provision of the plea agreement and as a result Hall "didn't fully understand" the agreement. Finally, Hall claims that Mr. Edmond was ineffective because he filed the defense sentencing memo without allowing Hall to review it beforehand.

In his filing, Mr. Hall fails to support his assertions with record citations, exhibits, a declaration, or any other evidence.

### III.   DISCUSSION

A. Legal Standard

A motion under 28 U.S.C. § 2255 permits a federal prisoner in custody to collaterally challenge his sentence on the grounds that it was imposed in violation of the Constitution or laws of the United States, or that the Court lacked jurisdiction to impose the sentence or that the sentence exceeded the maximum authorized by law.

A petitioner seeking relief under Section 2255 must file his motion with the one-year statute of limitations set forth in § 2255(f).

A claim may not be raised in a Section 2255 motion if the defendant had a full opportunity to be heard on the claim during the trial phase and on direct appeal. *See Massaro v. United States*, 123 S. Ct. 1690, 1693 (2003). Where a defendant fails to raise an issue before the trial court, or presents the claim but then abandons it, and fails to include it on direct appeal, the issue is deemed "defaulted" and may not be raised under Section 2255 except under

unusual circumstances. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also United States v. Braswell*, 501 F.3d 1147, 1149 & n.1 (9th Cir. 2007). Unless the petitioner can overcome this procedural default, the Court cannot reach the merits of his claims. *See Bousley*, 523 U.S. at 622. To do so, the petitioner must "show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982).[1] To demonstrate "cause" for procedural default, a defendant generally must show that "some objective factor external to the defense" impeded his adherence to a procedural rule. *Murray*, 477 U.S. at 488. *See also United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003). The Supreme Court has held that "cause" for failure to raise an issue exists "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984). The "prejudice" prong of the test requires demonstrating "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 at 170.

**B. Analysis**

There is no dispute that Mr. Hall meets the "custody" requirement of the statute and that this Motion is timely under § 2255(f). This is not a second or successive petition.

Hall's argument that the district court forced him to enter a guilty plea was raised on direct appeal and rejected by the Ninth Circuit. Therefore, the claim is procedurally defaulted. *Massaro*, 123 S. Ct. at 1693.

Ineffective assistance claims may be brought on collateral review even if not raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). The standards to be applied

---

[1] Another means by which procedural default may be excused is by establishing actual innocence. *See Bousley*, 523 U.S. at 622.

to ineffective assistance claims are those defined in *Strickland v. Washington*, 466 U.S. 668 (1984). Such a claim has two components: inadequate performance by counsel, and prejudice resulting from that inadequate performance. To prevail, a defendant first must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. However, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 688 (citation omitted). The presumption is that counsel was competent. *Id*. Even if the first part of the *Strickland* test is satisfied, a defendant is not entitled to relief unless he can show prejudice. *Id*. at 687. A defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The Government responds to each of Mr. Hall's claims. In response to the first claim, the Government argues that defense counsel made the right decision to drop the "taser made me do it" defense, that the Court noted at sentencing that the evidence was "pretty strong" that Hall did not accidentally discharge his firearm, and that in any event Hall waived his right to file pretrial motions and mount a trial defense in the plea agreement. Dkt. #5 at 11–12. For the second claim, the Government states "Hall fails to provide any specific evidence or reason to believe that occurred" and that "[t]he overall record in the case is inconsistent with Hall's claim." *Id.* at 12. The Government calls the third claim frivolous and unsupported by the record, praising defense counsel's ability to secure the plea agreement. *Id.* at 13. The fourth

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 9

claim is argued to be inconsistent with Mr. Hall's statements in both the plea agreement and plea colloquy. *Id*. Regarding the final claim, the Government states that even assuming Mr. Edmond's act of filing the defense sentencing memo without allowing Hall to review it beforehand was deficient, Hall suffered no prejudice. *Id*. at 14. This lack of prejudice is shown by Hall's statements at sentencing, where he essentially waived this claim. *Id*.

Mr. Hall has failed to file a reply brief addressing the Government's valid points on these issues.

Considering all of the above, the Court finds that Mr. Hall has failed to show that his counsel committed any error, or that he would not have pleaded guilty or that his counsel otherwise "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. The only possible error, failing to review the defense sentencing memo, did not result in the prejudice required under the second prong of *Strickland*. The Court agrees with the Government that there is no reason to believe that "the result of the proceedings would have been different" had Hall reviewed the sentencing memorandum earlier. *See* Dkt. #5 at 14.

**C. Certificate of Appealability**

A petitioner seeking post-conviction relief under § 2255 may appeal this Court's dismissal of his petition only after obtaining a Certificate of Appealability ("COA") from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of [her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*,

537 U.S. 322, 327, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).  The Court finds that the law and facts above are clear and there is no basis to issue a COA.

## IV. CONCLUSION

Having considered Petitioner's Motion, the Government's Response, and the remainder of the record, the Court hereby finds and ORDERS:

1. Petitioner's Motion under § 2255 (Dkt. #1) is DENIED.  No COA shall be issued.

2. This matter is now CLOSED.

3. The Clerk of the Court is directed to forward a copy of this Order to Petitioner and all counsel of record.

DATED this 27th day of January, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE